Timothy C. Hester
Mark H. Lynch
Christopher N. Sipes
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, NW
Washington, DC  20004-2401
(202) 662-6000

C. William Phillips
Michael C. Nicholson
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
(212) 841-1000

*Counsel for Purdue Defendants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
---------------------------------------------------- x
In re:                                               :
                                                     :
OXYCONTIN ANTITRUST LITIGATION        :  04-MDL-1603 (SHS)
                                                     :
This Document Relates To:  All Cases     :  ECF Case
---------------------------------------------------- x
```

## PURDUE'S MEMORANDUM OF LAW IN OPPOSITION TO JOINT MOTION TO LIFT THE STAY OF DIRECT PURCHASER CLASS PLAINTIFFS AND NON-CLASS PLAINTIFFS

The Purdue Defendants (collectively, "Purdue")[1] hereby file this

Memorandum of Law in Opposition to the Joint Motion to Lift the Stay in these

---

[1] The "Purdue Defendants" are Purdue Pharma L.P. (individually, and as successor in interest to The Purdue Pharma Company), The Purdue Frederick Company, The P.F. Laboratories, Inc., Purdue Pharmaceuticals L.P., Purdue Pharma Inc., and Euroceltique S.A.

antitrust cases filed by the Direct Purchaser Class Plaintiffs and Non-Class
Plaintiffs ("Plaintiffs").

Despite Plaintiffs' characterization of their antitrust claims as
"wholly separate and independent from the patent litigation" (Memorandum in
Support of Motion to Lift the Stay ("Mem.") at 3), their complaints rely on and
quote extensively from this Court's prior opinion in the patent litigation,[2] and
their antitrust claims are clearly interrelated with the outcome of the patent
litigation.  In particular, Plaintiffs' claims that the patent litigation is a "sham"
would be defeated as a matter of law if Purdue prevails in the patent litigation.
Likewise, Plaintiffs' claims that Purdue committed fraud on the Patent Office
and thereby procured an invalid patent would be defeated as a matter of law if
Purdue prevails on the validity and enforceability of its patents in the underlying
patent litigation.

This Court has already recognized this clear interrelationship
between these antitrust claims and the underlying patent litigation:  "if one or
more claims of one or more of the three Purdue patents in suit is determined to
be enforceable after trial, there will be no need to try the related Endo antitrust
counterclaim . . . since it cannot be an antitrust violation to assert a valid and
enforceable patent."  (Order of 12/10/02, at 2, *Endo* Dkt. 41.)  Likewise, in
granting the current stay, the Court noted that "disposition of the antitrust

---

[2]      *See, e.g.*,  SAJ Distributors Compl. ¶¶ 32, 34-37; Walgreen Compl. ¶¶ 32-
44; Medic Drug Compl. ¶¶ 36-44.

issues will be greatly impacted by the determination on remand of the validity of the underlying patent."  (MDL Order No. 2, at 2, Dkt. 76.)

The interrelationships between the patent litigation and these antitrust claims, which the Court has already found, remain fully applicable. Thus, the most orderly and efficient course is to await a final decision in the underlying patent litigation before proceeding with the antitrust claims, since the outcome of that litigation may be dispositive of Plaintiffs' antitrust claims as a matter of law.  If the Court concludes that it is prepared to go forward now, Purdue stands ready to file early dispositive motions to dismiss these antitrust claims.  But Purdue submits that it is more efficient and orderly to await the outcome of the patent litigation before the Court and the parties undertake the burdens and expense of this motions practice.

## I.    If Purdue Prevails in the Underlying Patent Litigation, Plaintiffs' "Sham Litigation" Claims Will Be Barred as a Matter of Law.

Every complaint filed by Plaintiffs alleges that Purdue's litigation to enforce its patents was a "sham" and therefore a violation of the antitrust laws. In *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 60 (1993) ("*PRE*"), the Supreme Court held that such claims of sham litigation require proof by clear and convincing evidence that the litigation was "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits."  Further, the Court held that "[a] winning lawsuit is by definition a reasonable effort at petitioning for redress and therefore not a sham."  *Id.* at 60 n.5.

For this reason, if Purdue prevails in the patent litigation, Plaintiffs' antitrust claims of "sham litigation" will be barred as a matter of law under *PRE*. This demonstrates why it makes sense to await resolution of the patent case before launching into litigation of Plaintiffs' "sham" claims. While Plaintiffs' "sham" claims could be readily defeated now on a motion to dismiss[3] -- even before resolution of the patent litigation -- the most sensible route is to await the outcome of the patent litigation because if Purdue prevails this will conclusively bar Plaintiffs' claims.

Plaintiffs miss the point in arguing (Mem. at 4) that, as a matter of collateral estoppel doctrine or Seventh Amendment rights, they are not bound by the decision in the underlying patent litigation. The issue is not whether collateral estoppel binds the Plaintiffs. Rather, the issue is that the antitrust claims against Purdue are barred by *Noerr-Pennington* immunity if Purdue

---

[3]    At least two dispositive arguments would defeat Plaintiffs' claim that the patent litigation was "objectively baseless." First, the Endo, Teva, Impax, and Boehringer Ingelheim patent lawsuits were resolved by settlements in which each defendant admitted their infringement of Purdue's patents and was enjoined from future infringement -- the precise outcome Purdue sought in filing suit. A favorable resolution through settlement that achieves the objectives of the litigation cannot be a sham. *See, e.g., In re Fresh Del Monte Pineapple Antitrust Litig.*, No. 04MD1628 (RMB)(MHD), 2007 WL 64189, at *19 (S.D.N.Y. Jan. 4, 2007) (rejecting sham litigation claim where the litigation was resolved through a favorable settlement). Second, before Purdue filed suit against Endo, this Court (affirmed by the Federal Circuit) had previously granted a preliminary injunction in Purdue's favor in another suit involving the very same patents, holding that Purdue had a reasonable likelihood of success on the merits. *Purdue Pharma L.P. v. Boehringer Ingelheim GmbH*, 98 F. Supp. 2d 362 (S.D.N.Y. 2000), *aff'd*, 237 F.3d 1359 (Fed. Cir. 2001). Many courts have found that the issuance of such preliminary injunctive relief "precludes a finding that the [subsequent] litigation was 'objectively baseless.'" *See, e.g., Intellective, Inc. v. Mass. Mut. Life Ins. Co.*, 190 F. Supp. 2d 600, 608 n.2 (S.D.N.Y. 2002) (citation omitted).

succeeds in the underlying patent litigation.[4]  Enforcing patent rights is a form of

petitioning activity, and if Purdue prevails it cannot be subject to antitrust

claims based on that petitioning activity.

PRE makes this point explicitly, in holding that there cannot be a

"sham litigation" claim as a matter of law if the antitrust defendant has

prevailed in the underlying litigation.  508 U.S. at 60 n.5.  This Court made the

same point in its December 2002 Order:  "it cannot be an antitrust violation to

assert a valid and enforceable patent."  (12/10/02 Order, at 2.)

## II.    If Purdue's Patents Are Valid, Plaintiffs' *Walker Process* Claims Will Be Barred as a Matter of Law.

With one exception,[5] every complaint filed by Plaintiffs also alleges

that Purdue should be liable under the antitrust laws for "fraud" in procuring its

patents.  Under *Walker Process Equipment, Inc. v. Food Machinery & Chemical

Corp.*, 382 U.S. 172 (1965), liability cannot be imposed for conduct in applying for

a patent unless the patent was obtained through "knowing and willful fraud" and

the patentholder was "aware of the fraud when bringing suit" to enforce the

patent.  *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1068-69

---

[4]     The First Amendment guarantees "the right . . . to petition the government for a redress of grievances."  Under the *Noerr-Pennington* doctrine, derived from that First Amendment right, "[t]hose who petition government for redress are generally immune from antitrust liability."  *PRE*, 508 U.S. at 56.  *Noerr-Pennington* applies to petitioning conduct before courts, including, in particular, the filing of lawsuits and the procurement of patents.  *See Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1068 (Fed. Cir. 1998).

[5]     The complaint filed by SAJ Distributors contains no antitrust allegations based on alleged fraud by Purdue.

(Fed. Cir. 1998). "*Walker Process* fraud is a more serious offense than inequitable conduct" and "requires higher threshold showings of both intent and materiality than does a finding of inequitable conduct." *Id.* at 1070-71. Unlike materiality for purposes of inequitable conduct, *Walker Process* requires a showing "that the patent would not have issued <u>but for</u> the misrepresentation or omission." *Id.* at 1071 (emphasis added).

To advance a viable *Walker Process* claim, a misrepresentation or omission by the patentholder "must evidence a clear intent to deceive the examiner and thereby cause the PTO to grant an <u>invalid</u> patent." *Id.* at 1070 (emphasis added). A party must show that "but for" the misrepresentation or deliberate omission, "the patent would not have been granted" by the Patent Office. *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1364 (Fed. Cir. 1998).

Like the "sham litigation" claims discussed in Part I, *supra*, Purdue's conduct in seeking patents from the federal government is protected petitioning activity that is subject to *Noerr-Pennington* immunity.[6] If Purdue holds valid and enforceable patents, it has succeeded in that petitioning activity. Similarly, Purdue's conduct in bringing a patent enforcement action constitutes petitioning conduct that is protected under *Noerr-Pennington*, unless the action was brought to knowingly enforce a fraudulently procured patent. *Nobelpharma*,

---

[6]    *See Calif. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510-11 (1972) ("the right to petition extends to all departments of the Government"); *Nobelpharma*, 141 F.3d at 1068 (applying the *Noerr-Pennington* doctrine to procurement of patents).

141 F.3d at 1068 ("a patentee who brings an infringement suit may be subject to antitrust liability for the anti-competitive effects of that suit" when "the asserted patent was obtained through knowing and willful fraud").  Under *Noerr-Pennington*, there cannot be antitrust liability imposed if Purdue achieves success in these forms of petitioning activity.  *See PRE*, 508 U.S. at 58 ("[W]e have explicitly observed that a successful 'effort to influence government action . . . certainly cannot be characterized as a sham.'" (quoting Allied Tube & Conduit Corp. v. Indian Head, Inc., 486 U.S. 492, 502 (1988))); *Greenwood Util. Comm'n v. Mississippi Power Co.*, 751 F.2d 1484, 1505 (5th Cir. 1985) ("First Amendment petitioning privileges would indeed be hollow if upon achieving a petitioned-for end the petitioner were then subjected to antitrust liability for his success.").

For this reason, it does not make sense to proceed with litigation on Plaintiffs' *Walker Process* claims until the issue of patent validity is decided. Purdue fully anticipates that its patents will be found valid, and indeed this Court has already found a reasonable likelihood of success on the issue of validity.[7]  With a favorable validity ruling, Plaintiffs' claims based on Purdue's conduct in seeking and enforcing its patents will be barred as a matter of law under the *Noerr-Pennington* doctrine.

As discussed previously in Part I, this is not an issue of whether Plaintiffs are bound as a matter of collateral estoppel by the decision in the

---

[7]    *Purdue Pharma L.P. v. Boehringer Ingelheim GmbH*, 98 F. Supp. 2d 362, 397 (S.D.N.Y. 2000), *aff'd*, 237 F.3d 1359 (Fed. Cir. 2001).

underlying patent litigation.  Rather, the issue here is the scope of *Noerr-Pennington* immunity for successful petitioning activity.  It does not make sense to proceed with litigation over this *Walker Process* claim, and the scope of Purdue's *Noerr-Pennington* immunity, until the underlying patent litigation is concluded.  There are also other bases on which to reject Plaintiffs' *Walker Process* claims on a motion to dismiss[8] -- even before the patent litigation is decided -- but the more orderly approach is to await the resolution of the patent litigation because the outcome there could bar Plaintiffs' claims.

*        *        *

---

[8]    "[A]n <u>extremely high</u> level of misconduct, actual fraud, is necessary to sustain a *Walker Process* antitrust claim."  *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 882 F.2d 1556, 1563 (Fed. Cir. 1989) (emphasis added).  The Federal Circuit has already ruled that the materiality of Purdue's statements to the Patent Office was "not especially high" and "relatively low" even for purposes of the <u>lower</u> standard of materiality applicable to the defense of inequitable conduct. *Purdue Pharma L.P. v. Endo Pharms. Inc.*, 438 F.3d 1123, 1133, 1134 (Fed. Cir. 2006).  It necessarily follows that the plaintiffs cannot establish the level of materiality required to establish the "extremely high level of misconduct" necessary for a cognizable fraud claim.  Further, this Court has already found that there was no "intent to deceive" under the <u>lower</u> standard of deceptive intent that applies to the defense of inequitable conduct.  It necessarily follows that Plaintiffs cannot create a triable issue of fact under the <u>higher</u> standard of "knowing and willful fraud" that applies to a *Walker Process* claim. *Nobelpharma*, 141 F.3d at 1068-69.  The factual arguments that Plaintiffs raise in their moving papers, all of which deal with issues already presented to the Court, are simply inadequate to create a triable issue of "knowing and willful fraud" when the Court has already rejected them as not rising to the lower level of an  intent to deceive.

For the foregoing reasons, Purdue submits that the Court should continue the stay of antitrust proceedings until final resolution of the underlying patent litigation on which plaintiffs' claims are based.

Respectfully submitted,

_  s/Timothy C. Hester_

| | |
|---|---|
| C. William Phillips | Timothy C. Hester |
| Michael C. Nicholson | Mark H. Lynch |
| COVINGTON & BURLING LLP | Christopher N. Sipes |
| The New York Times Building | COVINGTON & BURLING LLP |
| 620 Eighth Avenue | 1201 Pennsylvania Avenue, NW |
| New York, NY 10018-1405 | Washington, DC  20004-2401 |
| (212) 841-1000 | (202) 662-6000 |
| (212) 841-1010 (facsimile) | (202) 662-6291 (facsimile) |

Dated:  March 7, 2008                    *Counsel for Purdue Defendants*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a copy of the foregoing **Purdue's Opposition to Direct Purchaser Class Plaintiffs' and Non-Class Plaintiffs' Joint Motion to Lift the Stay** was served upon the attorneys of record in this proceeding on March 7, 2008, by filing the same electronically through the Electronic Case Filing ("ECF") system of the U.S. District Court for the Southern District of New York, which system electronically provides notice of the filing and access to the filing to all counsel of record who are admitted to the Court and have registered for notification of filing through the ECF system.

Dated:  March 7, 2008

                            <u>     s/Timothy C. Hester     </u>
                                   Timothy C. Hester